**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **STORM WORKS ROOFING & RESTORATION, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**AMGUARD INSURANCE COMPANY, INC.,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)  **Civil Action No.**<br>)  **23-13198-FDS**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER ON
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**SAYLOR, J.**

This case involves an insurance dispute.  Jurisdiction is based on diversity of citizenship. Plaintiff Storm Works Roofing & Restoration, Inc. filed suit against AmGuard Insurance Company, Inc. as assignee of Lakeside Vista, LLC and QP Holdings, LLC, which owned and operated two commercial buildings in Wakefield, Massachusetts.  Following a storm in the fall of 2020, the buildings sustained roof damage, for which QP submitted a claim to AmGuard. AmGuard paid QP the full cost of repairing the then-existing roof structures, but declined to cover the full cost of installing plywood decking as a base on which to attach new roof tiles.

QP later assigned its claims against AmGuard to Storm Works, the contractor that performed the repair work on the buildings in question.  Plaintiff asserts claims for breach of contract and unfair trade practices under Mass. Gen. Laws ch. 93A and ch. 176D.

Defendant has now moved for summary judgment on all of plaintiff's claims.  For the reasons that follow, the motion will be granted.

I.    **Background**

A.    **Factual Background**

The following facts are undisputed unless otherwise noted.

Storm Works Roofing & Restoration, Inc. is a Massachusetts corporation with its principal place of business in Massachusetts.  (Def.'s Statement Undisputed Material Facts ("Def.'s SMF") ¶ 1, Dkt. No. 29).

AmGuard Insurance Company, Inc., is a Pennsylvania corporation with its principal place of business in Pennsylvania.  (Am. Compl. ¶ 2; Def.'s Corporate Disclosure Statement, Dkt. No. 3).

On August 23, 2020, wind damaged the roofs of two commercial properties located at 591 and 599 North Avenue in Wakefield, Massachusetts.  (Def.'s SMF ¶¶ 2-3).  Those properties were owned by Lakeside Vista, LLC, and were managed by QP Holdings, LLC.  (*Id.* ¶ 2).  QP was the policyholder on an insurance policy issued by AmGuard covering both properties.  (*Id.* ¶ 5).

On November 12, 2020, QP entered into a contract with Storm Works to repair the roof damage to the two properties.  (*Id.* ¶ 7).  Each contract was for $193,806.04.  (*Id.* ¶ 8).

After beginning work on the project, Storm Works discovered a condition in the existing roof system that significantly increased the cost of repair.  (*Id.* ¶ 11).  In essence, Storm Works found that the substrate below the damaged roof tiles was made of concrete.  (Def.'s Memo Supp. Summ. J., Ex. 2 at 1, Dkt. No. 28-3).  This presented an issue because installing the new roof tiles directly onto the concrete substrate would mean that they would not be covered by the manufacturer's warranty, and because doing so would violate the Massachusetts Building Code.

(*Id.* at 1-2).  In order to complete the repair within code, Storm Works installed half-inch CDX plywood over the existing concrete roof decks at an additional cost of $70,200 per building, or $140,400 total.  (Def.'s SMF ¶ 11; Pl.'s Opp. Mot. Summ. J. ("Pl.'s Opp."), Exs. 16, 17, Dkt No. 30-1).

After the work was complete, QP submitted a claim to AmGuard for the full cost of the repairs.  (*See* Def.'s Memo. Supp. Summ. J., Ex. 6 at 1, Dkt. No. 28-7).  In a letter dated March 11, 2021, AmGuard agreed to pay for the full cost of repairs to the already-existing roof structures but offered to pay only $10,000 per building for the cost of the plywood installation.  (*Id.*; Def.'s SMF ¶¶ 13-14).  AmGuard based its refusal to pay the full cost of repair on a policy exclusion providing that AmGuard would "pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property," but that "[t]he most [AmGuard would] pay under this [provision], for each described building insured . . . is $10,000."  (Def.'s Memo. Supp. Summ. J., Ex. 6 at 3).[1] The record does not reflect what contemporaneous response, if any, Storm Works provided to that letter.  Storm Works eventually sent another demand letter to AmGuard on May 16, 2023, reiterating its position that it was entitled under the policy to compensation for the full cost of the plywood installation.  (Pl.'s Opp., Ex. 20, Dkt. No. 30-1).

Storm Works also brought suit in Middlesex Superior Court in 2021 seeking recovery for the cost of repairs from QP and Lakeside directly.  (Def.'s Reply, Ex. 1, Dkt. No. 33-1).  That suit was dismissed by stipulation of the parties on March 20, 2023.  (*Id.* at 3).

---

[1] Although defendant attached a document that appears to be QP's insurance policy as an exhibit to its memorandum in support of summary judgment, this provision does not appear within the document.  (*See* Def.'s Memo. Supp. Summ. J., Ex. 3, Dkt. No. 28-4).  However, the provision is quoted in full in the March 11 letter, and plaintiff does not argue that the quotation does not accurately reflect the text of QP's policy from AmGuard.

QP assigned its claims against AmGuard to Storm Works on March 16, 2023.  (Def.'s SMF ¶ 15; Def.'s Memo. Supp. Summ. J., Ex. 7, Dkt. No. 28-7).

### B.    Procedural Background

The initial complaint was filed in Middlesex Superior Court on October 2, 2023.  (Dkt. No. 6 at 3).  Plaintiff filed an amended complaint properly naming defendant on November 3, 2023. (*Id.*).  Defendant was served with the amended complaint on December 18, 2023.  (Notice of Removal, Dkt. No. 1 at 2).  Defendant removed the case to this court on December 26, 2023. (*Id.* at 1).

Defendant has moved for summary judgment as to all claims.  (Dkt. No. 27).

### II.    Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted).  The nonmoving party may not

simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### III.    Analysis

#### A.    Breach of Contract (Count 1)

The complaint asserts that defendant breached the policy when it failed to cover the full cost of repairing the roofs at 591 and 599 North Avenue, including the full cost of the plywood installation. (Am. Compl. ¶¶ 8, 20, 29-31). Defendant has moved for summary judgment on the ground that the claim is time-barred because neither QP/Lakeside nor plaintiff commenced suit against it within the relevant limitations period. (Def.'s Memo. Supp. Summ. J. 4-7, Dkt. No. 28).

Mass. Gen. Laws ch. 175, § 99 provides that all property insurance policies protecting against fire loss[2] written on property within the Commonwealth must include the following language:

> No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

---

[2] Even though the loss in this case was caused by wind, not fire, the standard fire insurance policy requirement still applies because the policy insures against fire damage as well. *See Morin v. Metropolitan Prop. & Cas. Ins. Co.*, 2016 WL 9053346, at *1 (D. Mass. June 7, 2016).

This provision was included verbatim in the policy covering 591 and 599 North Avenue. (Def.'s Memo. Supp. Summ. J., Ex. 3 at 31, Dkt. No. 28-4).

The loss occurred on August 23, 2020, and this action was not filed in Middlesex Superior Court until September 20, 2023. (Def.'s SMF ¶¶ 3, 15). Because this suit was commenced more than two years after the loss occurred, the claim is time-barred.

Plaintiff's argument in opposition is unpersuasive. It argues that the filing of this suit should, for purposes of satisfying the limitations provision, relate back to the date that it filed a state-court action against Lakeside and QP for their failure to pay for the additional costs of the plywood installation. (Pl.'s Opp. Mot. Summ. J. 5-7, Dkt. No. 30). That state-court action was filed on June 17, 2021. (*Id.* at 5). If this action did in fact relate back to the earlier one, the breach-of-contract claim would not be time-barred. That argument, however, fails for at least two reasons.

First, plaintiff provides no authority for the proposition that the relation-back doctrine can apply to a newly filed civil action, as opposed to an amendment to the pleadings in an already existing action. The principle underlying Rule 15(c) and the relation-back doctrine is that "once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading." 6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1496 (3d ed. 2025). In seeking to dramatically expand the doctrine's scope, plaintiff simply argues that "Massachusetts practice is more liberal than other jurisdictions in allowing amendments adding or substituting defendants after expiration of a period of limitations." *NES Rentals v. Maine Drilling & Blasting, Inc.*, 465 Mass. 856, 865 (2013)

(quoting *National Lumber Co. v. LeFrancois Constr. Corp.*, 430 Mass. 663, 671 (2000)).  Setting aside whether Massachusetts law has any application—now that the case is in federal court and is governed by the Federal Rules of Civil Procedure rather than state-law procedural rules[3]—no case to which plaintiff cites holds that the relation-back doctrine can apply in an entirely new proceeding, even in state court.  And the First Circuit has explicitly stated that "Rule 15(c) simply does not apply where, as here, the party bringing suit did not seek to 'amend' or 'supplement' [its] original pleading, but, rather, opted to file an entirely new [action] at a subsequent date."  *Neverson v. Bissonnette*, 261 F.3d 120, 126 (1st Cir. 2001).

Second, plaintiff's proposed application of the doctrine runs counter to Rule 15(c)(1)(C).  That rule provides that where an amendment to the pleadings "changes the party . . . against whom a claim is asserted," the amendment relates back to the date of the original pleading only where (1) the new defendant "received such notice of the action that it will not be prejudiced in defending on the merits" and (2) the new defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c).  While it is unclear whether the first precondition for relation back has been met,[4] the second clearly has not.  Plaintiff did not fail to bring a claim against defendant in the earlier action due to a "mistake concerning the proper party's identity."  *Id.*  It pursued an altogether different claim:  one for breach of the contract between itself and QP/Lakeside.  This case, by contrast, is based on QP/Lakeside's claim against defendant for breach of the insurance

---

[3] See, for example, *Morel v. DaimlerChrysler AG*, 565 F.3d 20, 24 (1st Cir. 2009) (holding that Puerto Rico statute governing relation-back doctrine did not apply in diversity suit because Rule 15(c) was "squarely on point" and "does not transgress the Rules Enabling Act").  See also *Berk v. Choy*, 146 S. Ct. 546, 552 (2026) ("[A] valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test.").

[4] Based on the December 7, 2020, letter sent from plaintiff's attorney to defendant, defendant would have been on notice that plaintiff and QP were seeking payment for the full additional cost of repair to the roofs.

policy, which was later assigned to plaintiff.  A different claim, against a different defendant, arising out of a different contract, cannot serve as an anchor to which any future claim can attach itself to avoid a limitations provision.

Plaintiff's claim for breach of contract is therefore barred by Mass. Gen. Laws ch. 175, § 99 and the corresponding contractual provision.  Accordingly, summary judgment will be granted to defendant as to Count 1.

**B.**      **Chapter 93A and Chapter 176D (Counts 2 and 3)**

Next, the complaint asserts that defendant violated Mass. Gen. Laws ch. 93A, § 11 when "it failed to properly adjust the claim" presented by Lakeside and QP.  (Am. Compl. ¶ 37).  The complaint similarly asserts that defendant violated Mass. Gen. Laws. ch. 176D by "fail[ing] to properly and completely adjust the claim for property damage" presented by Lakeside and QP. (*Id.* ¶ 42).  Defendant has moved for summary judgment on the basis that the allegations in the complaint do not amount to a violation of Chapter 93A or 176D.

Chapter 93A makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  Chapter 176D catalogues "unfair methods of competition and unfair or deceptive acts or practices in the business of insurance." Mass. Gen. Laws ch. 176D, § 3.  Those practices include unfair claim-settlement practices, such as failing to investigate claims promptly and reasonably, failing to affirm or deny coverage of claims in a timely manner, and failing to pay claims or make reasonable settlement offers once liability has become reasonably clear.  *See id.* § 3(9).

Claims under Chapter 93A may be based on conduct that also violates Chapter 176D. *Continental Ins. Co. v. Bahnan*, 216 F.3d 150, 157 (1st Cir. 2000) ("[C]onduct that abridges [Chapter 176D] may or may not abridge [Chapter 93A]"); *see, e.g.*, *Nyer v. Winterthur Int'l*, 290 F.3d 456, 461 n. 7 (1st Cir. 2002) ("[T]he legislature amended [C]hapter 93A, granting

consumers a private cause of action against insurers who violate [C]hapter 176D.").  A "violation of General Laws chapter 176D, § 3 . . . is evidence of an unfair business practice under chapter 93A, § 2, which would give rise to a cause of action under chapter 93A, § 11."  *Fed. Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 35 (1st Cir. 2007) (citing *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 754-55 (1993); *Peterborough Oil Co. v. Great Am. Ins. Co.*, 397 F. Supp. 2d 230, 244 (D. Mass. 2005)).

To determine whether a business practice is unfair under Chapter 93A, courts must consider "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."  *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975) (internal quotation marks and citation omitted).  In cases involving insurance disputes, the presence of extortionate tactics and the absence of good faith "generally characterize" actions under Chapters 93A and 176D.  *See Guity v. Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 344 (1994).

Those chapters do not, however, impose liability in cases of good-faith disputes over insurance coverage in which liability is "not reasonably clear."  *Id.* at 343.  Such disputes do not constitute unfair or deceptive trade practices, even if a court ultimately overrules the insurer's denial of a claim, as long as that denial was made in good faith, based upon a plausible interpretation of the insurance policy, and was not otherwise immoral, unethical, or oppressive.  *See, e.g.*, *New England Env't Techs. v. Am. Safety Risk Retention Grp., Inc.*, 738 F. Supp. 2d 249, 259 (D. Mass. 2010) ("Because [the insurer] based its denial on a plausible, albeit erroneous, interpretation of the policy language, its conduct did not constitute a violation of Chapter

9

176D."); *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 15 (1989) ("In good faith, [the insurer] relied upon a plausible, although ultimately incorrect, interpretation of its policy.  There is nothing immoral, unethical or oppressive in such an action. . . . We hold that [the insurer] did not engage in unfair or deceptive acts in this case."); *Guity*, 36 Mass. App. Ct. at 343 ("A plausible, reasoned legal position that may ultimately turn out to be mistaken—or simply, as here, unsuccessful—is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D.").

Here, the undisputed factual record shows that this case arose from a good-faith dispute between defendant and its policyholder as to whether the policy required defendant to pay for the newly added plywood or whether that repair fell within the code-upgrade limitation in the policy. In a March 11, 2021 letter, defendant detailed its position that a policy limitation expressly limited coverage for "increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property" to $10,000 per building.  (Def.'s Memo. Supp. Summ. J., Ex. 6 at 3-4).  Plaintiff, in its repeated correspondence with defendant, never disputed that interpretation or set out a countervailing argument for why the $10,000 limitation should not apply.  (*See* Pl.'s Opp'n, Exs. 18, 19, 20). Instead, plaintiff argued that the necessary plywood installation itself fell within a "direct physical loss" covered by the policy.  (*See id.*).  Whichever party is in fact correct regarding interpretation of the policy—a question as to which this Court takes no position—that is precisely the kind of good-faith dispute regarding policy interpretation that cannot form the basis for a claim under Chapters 93A and 176D.  *See Boston Symphony Orchestra*, 406 Mass. at 15; *Guity*, 36 Mass. App. Ct. at 343.

Plaintiff nonetheless argues that defendant's conduct constitutes an unfair trade practice, citing a decision of the Oklahoma Court of Civil Appeals finding that an insurer breached a policy agreement under factual circumstances somewhat similar to those of this case. *See Gutkowski v. Oklahoma Farmers Union Mut. Ins. Co.*, 176 P.3d 1232 (Okla. Civ. App. 2007). In that case, a hailstorm damaged the roof of the plaintiffs' home, which consisted of both a "top layer of composition (asphalt) shingles and an underneath layer of wood shingles that served as the 'nailable surface' or 'decking' to which the composition shingles were attached." *Id.* at 1233 (citation modified). The plaintiffs filed a claim to replace both the asphalt and wood shingles because the wood shingles would become useless once the damaged asphalt shingles were removed, as they could not be reused as a surface to which new asphalt shingles could be attached. *Id.* at 1234. The insurer, however, approved payment only for the cost of repairing the top layer of asphalt shingles, because it determined that only that part of the roof had suffered a "direct physical loss" and was therefore covered by the relevant policy. *Id.* Applying Oklahoma law, the court held that the wood and asphalt shingles were not "divisible and separate," and that "to properly indemnify the [plaintiffs], [defendant] was contractually obligated to pay for the tear off of the wood shingles and the re-decking of the [plaintiffs'] roof." *Id.* at 1235.

Notwithstanding the fact that Massachusetts, rather than Oklahoma law, applies to this dispute, *Gutkowski* is wholly irrelevant to the question of whether defendant violated Chapters 93A and 176D. That case may support plaintiff's argument that the policy entitled it to full payment, although there are meaningful factual differences between the two cases.[5] But that case is not persuasive on the question of whether defendant here engaged in "immoral, unethical

---

[5] In *Gutkowski*, the plaintiffs sought coverage for repairs to an already-existing wood substrate; here, plaintiff seeks coverage for the addition of a wood substrate that was not present at the time of loss.

11

or oppressive" conduct by adhering to "a plausible, although" possibly "incorrect, interpretation of its policy." *Boston Symphony Orchestra*, 406 Mass. at 15.  Therefore, plaintiff's arguments opposing summary judgment on the Chapter 93A and 176D claim are ultimately unpersuasive.

For those reasons, defendant has shown that its conduct does not amount to a violation of Chapters 93A and 176D.  And, in its opposition, plaintiff does not argue that it has a claim for violation of Chapter 93A unmoored from Chapter 176D.  (Pl.'s Opp. 7-10).  Therefore, the Court will grant summary judgment to defendant as to Counts 2 and 3.

## IV.    Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  March 19, 2026                              United States District Judge